# In the United States Court of Appeals
## for the Eleventh Circuit

---

No. 26-10693-G

---

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

JOSHUA DAVID NICHOLAS

Defendants – Appellants,

---

## Initial Brief

Appeal from the United States District Court
For the Southern District of Florida

District Court No. 1:22-cr-10693-JEM-3 (Martinez)

---

## Appendix

Joshua David Nicholas, MBA *pro se*

3116 S Kanner Hwy

Stuart, FL 34994

Phone: (772) 380-7618

Email: joshuadavidn94@gmail.com

## TABLE OF CONTENTS

Certificate of Interested Persons ..................................................................3

Table of Authorities ....................................................................................6

Statement Regarding Oral Argument ........................................................6

Reply Argument ..........................................................................................7

Conclusion ..................................................................................................18

Certificate of Compliance ..........................................................................22

Certificate of Service ..................................................................................23

## Certificate of Interested Persons

Pursuant to the Eleventh Circuit Rule 26.1-2 through 26.1-5, Josh Nicholas, *Pro Se* hereby submits this Certificate of Interested Persons and Corporate Disclosure Statement. The corporate disclosure statement does not apply because Mr. Nicholas is not a corporation. Mr. Nicholas believes that the people who have an interest in the outcome of this appeal are

1.  The Hon. Becerra, Jacqueline US District Judge

2.  Hon. Martinez, Jose – US District Judge

3.  Scott Diamond – Receiver for Defendant Empires Consulting Corp

4.  Empires Consulting Corp (EmpiresX)

5.  Flavio Goncalves – Defendant (Fugitive status)

6.  Emerson Pires – Defendant (Fugitive status)

7.  Enoquie Pires – Control person of EmpiresX

8.  Lorenz Pruss – Counsel for Receiver for Defendant Empires Consulting Corp.

9.  Caruso, Michael

10. Davis, Michael S

11. Doty, George E. Attorney for feds

12. Dunham, Christian

13. Fidelity Investments

14. Gonzalez, Juan Antonio

15. Hallmark, Sara

16. Holt, Julie – Former Attorney (Public defender)

17. Kawa Foad – Former Attorney (pro bono)

18. Adam Moskoqitz – State Class action attorney for victims of EmpiresX

19. Andrew Porter – Former Attorney

20. Josh Nicholas Greg  - random dude works or at least did at Goldman Sachs

21. Hyma, Mitchell Evan

22. Klco, Sara Michele

23. Lapointe, Markenzy

24. Laryea, Lorinda

25. Lowell, Kevin

26. McAiley, hon. Chris. M.

27. Nicholas Josh – person who did the appeal.

28. Otazo-Reyes, Hon Alicia M.

29. Reid, Hon Lisette M.

30. Ruiz Hon Rodolfo A II

31. Reading Quinones Jason

32. Silverstein, Joan

33. Steon, Emily Rose

34. Valdes, Yisel

35. All the named parties in ECF 55 on pages 1-12 (including "UNKNOWN")

36. <u>There IS a publicly traded company that has an interest in the outcome of this appeal. (Fidelity Investment ticker – FNF)</u>

# Table of Authorities

Cases

**. United States v. Rodriguez, 398 F.3d 1291, 1298 (11th Cir. 2005** ...................11
**.” *Foman v. Davis*, 371 U.S. 178, 181–82 (1962**....................................................10
*Brannan*, *Harris*, *Silvestri*, *Daniels*, and *Ortega* .......................................................9
**Forman v Davis, 371, US 178, 181-82 (1962** ........................................................15
**Hormel v Helvering, 312 U.S. 552,557 (1941**)......................................................15
***Hormel v. Helvering*, 312 U.S. 552, 557 (1941** ............................................... 10, 12
***United States v. Martinez*, 812 F.3d 1200 (10th Cir. 2015** ...................................15

Statutes

**§ 3205**....................................................................................................................14
**§ 3572(d), § 3613** .................................................................................................14

## Statement Regarding Oral Argument

Nicholas respectfully suggests that the briefs and record before the court do NOT adequately present the facts and legal arguments. Oral argument would significantly aid the decisional process.

# Reply Argument

This appeal focuses on a very simple and narrow question. **<u>Did the government over enforce the restitution order</u>**. Appellant says yes. The government dodged the question and attempted to reframe the issue.

The government made three arguments.

1.  They blamed the government's over-enforcement on the appellant.
2.  Argued a procedural trap to avoid the merits
3.  Threw out a red herring saying the court did not err

Each of these are frivolous for the following reasons.

### 1.  <u>Nicholas did not invite the error.</u>

The government argued Nicholas invited the error but never provided any evidence of knowing, voluntarily, or authorized consent to the garnishment. While the government was correct that substitute counsel occurred that is part of a bigger issue. When Kawa Foad offered *pro bono* support to represent Nicholas it was in bad faith. Mr. Foad was an un-indicted member of the EmpiresX Ponzi Scheme named as the Chief Legal Officer. Prior to sentencing Mr. Foad engaged in numerous games and abuse of law enforcement and more in an effort to view the discovery in the criminal case – to determine if he would be indicted. Nicholas

refused to provide him with the discovery as he was not allowed to share discovery with anyone else but the public defender.

After Nicholas was in prison Foad made numerous threats and even used other inmates to deliver threats to Nicholas while Nicholas was in prison. Nicholas then succumbed to Foad's many threats permitting him to become counsel of record. (The many BoP phone calls and emails are recorded). Nicholas attempted to fire Foad many times almost immediately after Foad completed notice of appearance.

Finally, Nicholas wrote a letter to the court in **ECF 89** asking Foad to remove himself and stop threatening him.(**See exhibits**) After Nicholas got out of prison he filed a motion to remove Foad and the government agreed in **ECF 105**. Foad consented he would remove himself. That was on 7/9/2025…It is now 5/10/2026 and neither the court nor Foad have removed Foad. Factually, Nicholas did not invite the error. Nicholas was victim of a vexatious attorney who has since fled the country after Nicholas shared evidence of Foad abusing illegal drugs also in another appeal in his initial brief in **case 25-12377-C** also in the 11th circuit of appeals.

Also, if you look at the filing in **ECF 89** the document is dated 7-14-2023. In other words – almost immediately after Nicholas realized that Foad played him he took corrective action. The reason the letter did not hit the docket until much later is because the guards were messing with the mail. Coleman Low federal prison has

a history of corruption. Prior to the prison becoming a men's prison it was a woman's prison but was converted after it came out that many of the guard were raping the female inmates. Then, during the time while Nicholas was at Coleman there was widespread corruption and a few guards even went to prison themselves[1]. In other words, Nicholas never even had the opportunity to speak with counsel, counsel deceived the government lying saying Nicholas consented when he did not, and it was all possible because the prison guards were withholding the mail. The evidence is here before you and speaks for itself !

Furthermore, the cases cited by the government are materially distinguishable. In *Brannan*, *Harris*, *Silvestri*, *Daniels*, and *Ortega*, the defendants themselves—or their counsel acting within clearly established litigation authority—<u>affirmatively endorsed procedural decisions directly within the scope of ordinary trial strategy</u>. By contrast, **liquidation of protected retirement assets to satisfy restitution obligations implicates significant property rights, due process concerns, and post-judgment enforcement mechanisms beyond routine litigation tactics**. The <span style="color:red">**government cites no controlling precedent establishing that defense counsel may unilaterally waive a defendant's right to**</span>

---

[1] Federal Correctional Officer Indicted In Florida For Sexual Abuse Of Inmate, Bribery - Tampa Free Press

Middle District of Florida | Federal Correctional Officer Sentenced To More Than Three Years In Federal Prison For Accepting Bribes And Introducing Contraband Into Prison | United States Department of Justice

**contest substantial post-judgment asset seizure absent the defendant's**

**informed consent**. Indeed, constitutional waiver principles generally require that relinquishment of substantial rights be knowing and voluntary, not presumed through silence or unexamined attorney action.

Moreover, procedural doctrines such as invited error must serve justice, not override it. As the Supreme Court has emphasized, "rules of practice and procedure are devised to promote the ends of justice, not to defeat them." ***Hormel v. Helvering*, 312 U.S. 552, 557 (1941**). Likewise, decisions on the merits should not be avoided through "mere technicalities**." *Foman v. Davis*, 371 U.S. 178, 181–82 (1962**). Here, applying invited error to bar review where Appellant may never have knowingly consented to the seizure would elevate procedural form over substantive fairness, effectively allowing potentially unauthorized attorney conduct to extinguish meaningful judicial review**. This Court should therefore reject the government's waiver theory and evaluate Appellant's claims on their merits**.

## 2. Even Under Plan-Error Review, This court Should Correct a Fundamental Deprivation of Property Rights because Procedural Technicalities Cannot Override Substantive Justice

Even assuming arguendo that Appellant did not preserve every procedural objection below, the government's attempt to reduce this appeal to a mere forfeiture analysis ignores the exceptional circumstances presented. Plain-error review does not bar relief where an error seriously affects the fairness, integrity, or public reputation of judicial proceedings. *United States v. Rodriguez*, **398 F.3d 1291, 1298 (11th Cir. 2005**). Here, the government obtained irreversible liquidation of Appellant's substantial retirement assets while Appellant was incarcerated, allegedly without his informed authorization, and under circumstances where his own counsel's consent is disputed. Such a deprivation implicates far more than ordinary procedural oversight—it strikes at the integrity of post-judgment enforcement itself.

The government's reliance on filing deadlines and local representation rules elevates procedural formalities over constitutional fairness. Appellant's delayed *pro se* challenge was not an attempt to strategically bypass procedural requirements, but rather an effort to contest a completed deprivation of property after discovering the consequences of counsel's purported consent. Courts have

long recognized that procedural rules exist to serve justice, not defeat it. ***Hormel v. Helvering*, 312 U.S. 552, 557 (1941**). Where substantial rights are implicated, particularly involving irreversible property seizures, rigid procedural barriers should not foreclose meaningful appellate review—especially where the alleged waiver itself is central to the dispute.

Furthermore, the district court's local prohibition on hybrid representation cannot be mechanically applied to insulate potentially unauthorized government action from review. The local rule governs orderly procedure; it does not—and cannot—transform disputed attorney conduct into a knowing constitutional waiver by the defendant. Nor does it eliminate this Court's discretion under plain-error review to remedy proceedings that undermine public confidence in fairness. If Appellant's retirement assets were liquidated without true informed consent and without meaningful opportunity to object, then the resulting error affects both substantial rights and the legitimacy of the judicial process. **Accordingly, even under plain-error standards, this Court should reach the merits and correct the injustice presented here**.

### 3. **The District Court Erred Because the Government conflates lawful enforcement authority with Unlimited enforcement power.**

The government's argument fails because Appellant does not dispute that restitution may generally be enforced through lawful collection mechanisms. The issue is whether the government lawfully used those mechanisms here, where Appellant was incarcerated, subject to a court-ordered payment schedule, and never personally authorized counsel to consent to the liquidation of his Roth IRA. The government repeatedly relies on broad enforcement statutes, **but those statutes do not eliminate due process, do not nullify the sentencing court's payment structure, and do not convert counsel's unexplained consent into Appellant's knowing waiver of substantial property rights**.

The judgment's language permitting the government to use "*other assets or income*" cannot be read as a blank check to seize and liquidate retirement assets without meaningful notice, informed consent, or judicial scrutiny. At most, that language preserves lawful collection remedies. It does not answer the central question: whether this particular garnishment was lawful when Appellant did not personally consent, did not receive a meaningful pre-deprivation opportunity to object, and was deprived of substantial retirement property while incarcerated. **The government's interpretation would render the payment schedule practically**

**meaningless and allow executive enforcement to override the sentencing court's structured restitution framework**.

The government's reliance on **§ 3572(d), § 3613, and § 3205** therefore proves too much. Those provisions authorize enforcement, but they do not authorize enforcement divorced from constitutional safeguards. A statute allowing garnishment does not resolve whether Appellant received meaningful process before the deprivation occurred. Nor does it resolve whether counsel had authority to waive Appellant's objections. The government's position assumes the very facts in dispute: that notice was meaningful, that consent was authorized, and that the liquidation was procedurally valid.

The government's attempt to distinguish *Martinez* also misses the point. Appellant does not rely on *Martinez* as binding precedent; he relies on its reasoning that a restitution schedule has legal significance and should not be treated as surplusage. Even if the judgment preserved collection rights, those rights had to be exercised lawfully and consistently with due process. "Other assets" language does not erase the difference between lawful collection and unreviewable liquidation.

Finally, the tax and penalty consequences are not the standalone basis for reversal. They show prejudice. Once the Roth IRA was liquidated, the harm

became irreversible. That is precisely why meaningful notice and an opportunity to object mattered before the funds were taken. The government's response treats the loss as harmless because some funds went toward restitution, but the Constitution does not allow the government to cure defective process merely by applying part of the seized property to a valid debt.

### 4. **The 10th Circuit's Reasoning Confirms that Court-Ordered Payment Schedules have legal meaning**

Dodging his issue for anything but the merits would be a significant injustice. Dicta in **Forman v Davis, 371, US 178, 181-82 (1962**) states "*It is too late in the day and entirely contrary to the spirit of the Federal Rules…for decisions on the merits to be avoided on the basis of…mere technicalities*". Here the government is attempting to diminish the logic of the 10th circuit and weaponizing the rules. "*Rules of practice and procedure are devised to promote the ends of justice, not to defeat them*". **Hormel v Helvering, 312 U.S. 552,557 (1941**). Here the government (department of justice) is doing exactly the opposite of justice!

The government's attempt to minimize ***United States v. Martinez*, 812 F.3d 1200 (10th Cir. 2015**), only confirms why this Court should reach the merits. *Martinez* recognizes the core principle Appellant advances here: ***a restitution judgment's payment schedule is not meaningless surplusage***. When a sentencing

court structures restitution payments, that structure reflects judicial consideration of the defendant's financial circumstances and the lawful manner in which restitution is to be paid. <u>The government may not simply treat the schedule as irrelevant whenever it prefers immediate collection</u>.

The government argues that *Martinez* is distinguishable because Appellant's judgment included language allowing the government to use other assets or income. But **that language merely preserves lawful enforcement remedies; it does not authorize unlawful or procedurally defective enforcement. Nor does it eliminate due process, informed waiver, or the court's role in structuring restitution**. If the government's position is accepted, then every payment schedule becomes functionally meaningless because the government could always bypass it by invoking general enforcement language.

**This Court should not create unnecessary tension with the Tenth Circuit by adopting a rule that nullifies restitution payment schedules**. At minimum, *Martinez* demonstrates that reasonable jurists have recognized the legal significance of installment-based restitution orders. If this Court rejects that reasoning and holds that a payment schedule has no practical limiting effect, it would deepen an important federal appellate conflict concerning restitution

enforcement, payment schedules, and the balance between judicial sentencing authority and executive collection power.

This case therefore presents more than a routine garnishment dispute. It raises an important question of federal restitution law: whether a court-ordered payment schedule has enforceable significance, or whether the government may disregard it through unilateral collection. The better rule—consistent with *Martinez*, due process, and the sentencing court's authority—is that the government may enforce restitution only through lawful means that respect both the judgment's structure and the defendant's right to meaningful process. Because the government failed to do so here, reversal is warranted. All illegally garnished assets should be immediately returned to Nicholas!

## Conclusion

For the foregoing reasons, the government's position rests on procedural assumptions that cannot withstand meaningful judicial scrutiny. First, Appellant did not knowingly or personally invite the error at issue, as there is no evidence that he voluntarily authorized counsel to consent to the irreversible liquidation of his Roth IRA or knowingly waived his right to challenge the garnishment. Second, even under plain-error review, the deprivation of substantial retirement assets under disputed consent and procedurally questionable circumstances implicates the fairness, integrity, and public reputation of judicial proceedings sufficiently to warrant corrective review.

Third, while federal law permits restitution enforcement, it does not authorize unlimited enforcement divorced from constitutional protections, due process, or the sentencing court's structured judgment. The government improperly conflates broad statutory enforcement authority with carte blanche power to disregard judicial payment schedules, meaningful notice requirements, and the distinction between lawful collection and procedurally defective seizure. Appellant's challenge is not to restitution itself, but to the unlawful manner in which the government executed its collection efforts under these facts.

Finally, the reasoning of *United States v. Martinez* confirms that restitution payment schedules possess real legal significance and should not be rendered meaningless by unilateral executive action. To hold otherwise would undermine sentencing courts' authority, create unnecessary circuit conflict, and elevate administrative enforcement over judicial structure. Because Appellant's property rights were substantially affected without demonstrated informed waiver, because the government's interpretation improperly minimizes the legal force of the sentencing judgment, and because justice favors substantive review over procedural technicalities, this Court should reverse the district court's denial of relief and remand for appropriate proceedings to return the garnished assets to Nicholas.

## Exhibit A

Case 1:22-cr-20296-JEM   Document 89   Entered on FLSD Docket 01/24/2025   Page 1 of 2

Dear Kawn Foad, Esq

22 CR 20296

I no longer want you to represent me. Our relationship is immediately terminated. Please remove yourself from all my cases. Stop delivering messages to me about my cases through inmates! Stop threatening my family & friends! I hope you get help & I'm praying for you.

Josh Nicholas
08943-510

7-14-23

Josh Nicholas

FILED BY _____ D.C.

JAN 24 2025

ANGELA E. NOBLE
CLERK U.B. DIST. CT.
S. D. OF FLA. - MIAMI

# Exhibit B

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF FLORIDA**

Case No. 22-20296-CR-MARTINEZ



FILED BY _NM_ D.C.

JUL 08 2025

CLERK U.S. DIST. CT.
S. D. OF FLA - FT LAUD

**UNITED STATES OF AMERICA,**

Plaintiff,

v.

**JOSHUA DAVID NICHOLAS,**

Defendant.

_____/

**Motion to Remove Mr. Kawa Foad & Represent himself *Pro Se* AND Modify conditions of Supervised Release to include Middle district of Florida & Southern District of Florida**

Defendant, Joshua David Nicholas, pro se, and respectfully moves this Court to remove

Mr. Foad as Defendant's counsel and to provide notice of his *pro se* status AND include his

travel restrictions to include the Middle District of Florida.

## I.  FACTUAL BACKGROUND

1.    On November 28, 2022, Mr. Nicholas was sentenced to 51 months of imprisonment for

## Certificate of Compliance

This brief complies with the type-volume limits of Federal Rules of Appellate Procedure 29(a)(5) because, according to the word-processing system used to prepare it (Microsoft Word 2024), it contains 2,975 words, excluding the portions the brief exempted by Federal Rules of Appellate Procedure 32(f).

I further certify that this brief complies with the typeface and type style requirements of Federal Rule of Appellate Procedure 32(a)(5) and (a)(6) because it has been prepared using Microsoft Word 2024 in a proportionally spaced typeface (Times New Roman, 14 point)

_/s/ Joshua David Nicholas_

Joshua David Nicholas, MBA

_Pro Se_

## Certificate of Service

I hereby certify that on 5/10/2026, I caused the forging to be served to the following parties via email.


George E Doty III

Chief, Appellate Division

99 N.E. 4th Street, Suite 500

Miami, Florida 33132-2111

(305) 961-9404

George.Doty@usdoj.gov

/s/ Josh Nicholas, MBA

772-380-7618

3116 S Kanner Hwy Stuart FL 34994

Joshuadavidn94@gmail.com